**FEDERAL ENERGY REGULATORY COMMISSION, Appellant,**

v.

**TRITON OIL AND GAS CORPORATION.**

No. 84–5088.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 29, 1984.

Decided Dec. 14, 1984.

Joel M. Cockrell, Atty., F.E.R.C., Washington, D.C., with whom Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., was on the brief, for appellant.

Bernard A. Foster, III, Washington, D.C., with whom Jacob Goldberg, Washington, D.C., was on the brief, for appellee.

Before: ROBINSON, Chief Judge, WRIGHT and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The Federal Energy Regulatory Commission ("Commission") appeals from a decision of the district court holding that the appropriate interest rate to be applied to refund obligations incurred by Triton Oil and Gas Corporation ("Triton") under the refund requirements of the Commission's Opinion No. 598[1] is the 7% interest rate specified in Opinion No. 598 and not the Commission's general, higher rate of interest established in its regulations, 18 C.F.R. § 154.102(c)(2) (1984), issued subsequent to Opinion No. 598. We affirm the district court.

I. BACKGROUND

We have already set forth a detailed account of the facts and intricate procedural background of this case in *Federal Energy Regulatory Commission v. Triton Oil & Gas Corp.*, 712 F.2d 1450 (D.C.Cir. 1983) ("*Triton I*"). Only those additional facts relevant to this appeal will be presented here. In *Triton I*, we held that Triton was subject to the refund obliga-

---

1. Opinion No. 598, 46 F.P.C. 86, issued on July 16, 1971, and was later modified in Opinion No. 598–A, 46 F.P.C. 633 (1971). These opinions approved a settlement agreement establishing ceiling rates for producer sales of natural gas in the Southern Louisiana area and imposing refund obligations of approximately $150,000,000.

*See* Brief for Commission at 5. Both opinions were affirmed by the Fifth Circuit in *Placid Oil Co. v. FPC*, 483 F.2d 880 (5th Cir.1973), which in turn was affirmed by the Supreme Court in *Mobil Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974).

tions established in Opinion No. 598 for the period October 1, 1968 to January 1, 1971. The case was remanded, however, to the district court to give Triton the opportunity to present any further defenses it might have available. Triton's petition for rehearing was denied by this court on October 3, 1983. Nine days later on October 12, 1983, Triton filed a statement with the district court waiving its opportunity to present any further defenses and stating that it stood "ready and prepared to make total refunds, including interest...." *See* Joint Appendix ("J.A.") at 157. Triton attached computations of the required refunds and interest due at 7% per annum as prescribed in Opinion No. 598. J.A. at 159–62. The Commission, however, objected to Triton's use of the 7% interest rate specified in Opinion No. 598, claiming that Triton must use the Commission's current fluctuating prime rate specified in its regulations. *See* 18 C.F.R. § 154.102(c)(2) (1984).[2] On December 13, 1983, following a hearing, *see* J.A. at 217–28, the district court entered an order, *see* J.A. at 229–31, stating that the 7% per annum simple interest rate specified in Opinion No. 598 was the rate applicable to Triton's refund payments. This appeal by the Commission followed.

## II. Discussion

The sole issue on appeal is whether the district court erred in finding Triton's refund obligations subject to the 7% interest rate prescribed in Opinion No. 598 and not the higher rate established by the Commission's current regulations. In rejecting the Commission's claim that Triton's refund obligations were subject to the Commission's current regulation establishing a fluctuating interest rate tied to market conditions,

the district court relied on the fact that the Commission itself has indicated that the 7% interest rate applies to refunds made pursuant to Opinion No. 598. *See* J.A. at 230. Indeed each time the Commission has incorporated new, higher interest rates in its general rules, subsequent to the issuance of Opinion No. 598, it has provided that the new rates would not be applicable to refunds made under Opinion No. 598.

The Commission first sought to increase its general interest rate from 7% to 9% in Order No. 513, 52 F.P.C. 920 (1974). This order was reversed and remanded, however, in *American Public Gas Association v. FPC*, 546 F.2d 983 (D.C.Cir.1976). The Commission then issued Order No. 513–A, 56 F.P.C. 289 (1976), correcting the deficiencies required by the remand and raising the interest to 9%, but with the *proviso* that:

Where there is a final non-appealable Commission order directing the disbursement of refunds of amounts collected or held during the time periods which are the subject of this order, the Commission does not intend to reconsider or modify those individual orders. The orders will stand as issued.

56 F.P.C. at 290.

In a subsequent order denying a rehearing and clarifying Order No. 513–A, the Commission specifically clarified the status of Opinion No. 598 stating:

In Opinions 598 and 662, a final, non-appealable order has been issued as to the interest rate to be paid on the amount of refunds to be subsequently determined, and the provision in Order No. 513–A regarding final and non-appealable orders applies. 56 F.P.C. 2332,

---

**2.** Specifically, 18 C.F.R. § 154.102(c)(2)(iii)(A) (1984) establishes the following formula for computing interest:

At an average prime rate for each calendar quarter on all excessive rates or charges held (including all interest applicable to such rates or charges) on or after October 1, 1979. The applicable average prime rate for each calendar quarter shall be the arithmetic mean, to

the nearest one-hundredth of one percent, of the prime rate values published in the *Federal Reserve Bulletin,* or in the Federal Reserve's "Selected Interest Rates" ..., for the fourth, third, and second months preceding the first month of the calendar quarter.

(B) The interest required to be paid under paragraph (c)(2)(iii)(A) of this section shall be compounded quarterly.

2336 (1976).[3] The Commission denied a petition for rehearing of this clarifying order, 56 F.P.C. 3402 (1976),[4] and its decision was affirmed by this court in *Northern Illinois Gas Co. v. FERC*, 575 F.2d 920 (D.C.Cir.1978).

Thereafter, the Commission issued Order No. 47, effective October 1, 1979, increasing the interest rate on refunds from 9% to the current fluctuating prime rate. [1977–1981 Transfer Binder] FERC Reg. Preambles (CCH) ¶ 30,083,[5] *aff'd*, *United Gas Pipe Line Co. v. FERC*, 657 F.2d 790 (5th Cir.1981). The Commission, however, specifically maintained the exception for interest rates on refunds previously fixed in final nonappealable orders, such as Opinion No. 598. *See* Order Clarifying Order Nos. 47 and 47–A, [1977–1981 Transfer Binder] FERC Reg. Preambles ¶ 30,121 (1979). The Commission explicitly expressed its intention to continue the policy set forth in prior Order No. 513–A stating:

> [T]he rates of interest prescribed by Order No. 47 will not apply where a different stipulated rate of interest has been

established by court order, or by a Commission order approving a settlement agreement which became final and nonappealable by September 10, 1979. *Id.* at 30,837. As recently as April 30, 1984, the Commission reaffirmed the non-applicability of its current interest rates to refunds required under Opinion No. 598. *See Disputed Zone Offshore Louisiana*, 27 F.E.R.C. ¶ 61,166 (1984).[6]

The foregoing discussion readily illustrates that the Commission's assertion that its current interest rate is applicable to Triton's refund obligations under Opinion No. 598 is totally inconsistent with the Commission's orders establishing interest rates on refunds and its implementation of those orders in other administrative proceedings.[7] *See supra* notes 4 & 6. The Commission seeks to justify its departure from its past practice by arguing that the imposition of interest on refunds is a means of preventing unjust enrichment, and that Triton will be unjustly enriched if it is not required to pay its refund obligations under Opinion No. 598 at the Commis-

---

3. The Commission set forth the following rationale for its position:

> The practical reason for drawing a distinction is the importance of having conclusive, final judgments upon which the parties to a proceeding may rely without fear that at some later point the terms agreed to or relied upon will be subject to change. In the interests of such finality, the Commission has determined that it is reasonable and non-discriminatory to make a distinction in the application of Order No. 513–A on the basis of whether a final, non-appealable order has been issued in a proceeding ....

56 F.P.C. at 2334 (1976).

4. In its order denying the rehearing, the Commission noted that it had reaffirmed its policy of not reconsidering interest rates established in final, nonappealable orders in several recent orders denying petitions requesting imposition of the new 9% rate. *See* 56 F.P.C. at 3404 & n. 6 (citing Texas Eastern Transmission Corp., 56 F.P.C. 2877 (1976); Northern Natural Gas Co., 56 F.P.C. 2870 (1976); Columbia Gas Transmission Corp. and Columbia Gulf Transmission Co., 56 F.P.C. 2678 (1976); Cities Service Gas Co., 56 F.P.C. 2669 (1976)).

5. Codified at 18 C.F.R. § 154.102(c)(2) (1984).

6. One of the questions in *Disputed Zone Offshore Louisiana* was what interest rate should

be applied to refunds under Opinion No. 598 where such refunds had been held in abeyance pending resolution of a boundary dispute between federal and state authority. The Commission stated that with respect to refunds under Opinion No. 598, all the terms of the settlement agreement approved in that opinion apply including the 7% interest rate. *See* 27 F.E.R.C. at 61,305. The Commission seeks to distinguish *Disputed Zone* by claiming that whereas in *Disputed Zone* liability for the refunds was not finally established until the boundary dispute was settled in *United States v. Louisiana*, 452 U.S. 726, 101 S.Ct. 2605, 69 L.Ed.2d 368 (1981), Triton's liability was finally established in *Mobil Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). *See* Brief for Commission at 18 n. 15. This argument is unpersuasive, *see infra* note 9.

7. The Commission adhered to its past practice in its initial complaint in the present case requesting only 7% interest. *See* J.A. at 8. It was not until after this court's decision in *Triton I*, and Triton's submission to the district court, on remand, of its computations of principal and interest due that the Commission for the first time requested interest calculated in accordance with its current regulations. *See* J.A. at 167–73.

sion's current rate of interest. *See* Brief for Commission at 12–18 (citing *United Gas Improvement Co. v. Callery Properties, Inc.,* 382 U.S. 223, 230, 86 S.Ct. 360, 364, 15 L.Ed.2d 284 (1965)). The Commission may not, however, rely solely on its equitable discretion to justify straying from well-established rules and procedures. The Commission must articulate valid reasons for its departure. *See Shell Oil Co. v. FERC,* 664 F.2d 79, 83 (5th Cir.1981) ("FERC's exercising its equitable discretion for the sake of exercise or simply because it possesses equitable discretion is insufficient justification for departing from the application of its general regulations.").[8] "Although an administrative agency is not bound to rigid adherence to its precedents, it is equally essential that when it decides to reverse its course, it must give notice that the standard is being changed, ... and apply the changed standard only to those actions taken by parties after the new standard has been proclaimed in effect." *Boston Edison Co. v. FPC,* 557 F.2d 845, 849 (D.C.Cir.) (holding FPC acted arbitrarily and abused its discretion by applying standard inconsistent with existing regulations) (citations omitted), *cert. denied,* 434 U.S. 956, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977). The Commission may not abuse its discretion by arbitrarily choosing to disregard its own established rules and procedures in a single, specific case. Agencies must implement their rules and regulations in a consistent, evenhanded manner.

The Commission, nevertheless, urges this court to hold that the 7% interest rate established in Opinion No. 598 for producer refunds was predicated upon producers effecting prompt compliance and that Triton's unreasonable delay in effecting compliance warrants imposition of the current interest rate on Triton's refund obligation. Brief for Commission at 17–18. Triton responds that it reasonably believed it had no refund obligation under Opinion No. 598 and that it should not be penalized for seeking a determination of the existence *vel non* of its refund obligation. *See* Brief for Triton at 15–16. The district court was persuaded by Triton's argument stating: "Triton should not be penalized for the reasonable exercise of its right to judicial review by having to pay a rate of interest higher than that mandated by Opinion 598." J.A. at 230. Under the circumstances of this case, we cannot say Triton's delayed compliance was unreasonable or unwarranted. An earlier opinion of the district court filed July 27, 1982, found that Triton had no obligations under Opinion No. 598. *See* J.A. at 144–55. Although in *Triton I* we reversed the holding of the district court, Triton's arguments were neither frivolous nor completely lacking in merit.[9]

---

**8.** The Commission cites *Shell* as supporting its argument that persons who unreasonably delay making refunds run the risk of interest rates increasing. *See* Brief for Commission at 21. The court in *Shell,* however, clearly distinguished cases covered by Opinion No. 598: Whereas *Shell* involved refunds by pipeline purchasers to producers, Opinion No. 598 is expressly applicable only to refunds by producers to pipeline purchasers. 664 F.2d at 82. Moreover, the court explicitly stated:

It is important to note that Opinion No. 598 was the adoption of a settlement agreement ... [and] [t]he interest rate was locked in because it was part of a settlement agreement. 664 F.2d at 80 n. 1.

**9.** The Commission asserts that Triton did not exercise its right to judicial review of Opinion No. 598 and that its refund obligation became final in 1974 with the Supreme Court's affirmance in *Mobil Oil Corp. v. FPC,* 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). *See* Brief for

Commission at 16–19 & n. 15. Triton, however, has never challenged the validity of Opinion No. 598. *See Triton I* at 1455 ("Triton does not contest the validity of Opinions No. 598 and 598-A."). Triton's only challenge was to whether it had any refund obligation under that opinion. *See* Brief for Triton at 20. This issue was finally decided in *Triton I.*

The Commission also asserts, *see* Reply Brief for Commission at 4–5, that Triton's position was unreasonable because the Commission had dispositively addressed the exact question upon which Triton based its contention that it had no refund obligation in an order issued sixteen months after Opinion No. 598. *See* Area Rate Proceeding ..., 48 F.P.C. 980 (1972) (interpreting Opinion No. 598 to require refunds whatever the nature of the certificate under which a producer was collecting charges). The Commission's order, however, only addressed one of three issues raised by Triton in *Triton I,* and in *Triton I* while we gave "some weight" to the

### III.   CONCLUSION

The Commission's assertion that Triton's refund obligations under Opinion No. 598 should be subject to the Commission's current fluctuating prime rate is a clear departure from the Commission's rules and past practices for which the Commission has given no valid justification. We, therefore, affirm the district court's order requiring Triton to make refunds at the 7% simple interest rate specified in Opinion No. 598.

*Affirmed.*

Commission's order, we clearly stated "that this subsequent order is not itself determina-      tive. . . ."   *Triton I* at 1462.