902 F.2d 795
 PHILLIPS PETROLEUM COMPANY and Phillips 66 Natural Gas
Company, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Arco Oil and Gas Company, a division of Atlantic Richfield
Company, Associated Gas Distributors, Mobil Oil Corporation,
Mobil Exploration & Producing Southeast Inc., Mobil
Producing Texas & New Mexico Inc., Mobil Exploration &
Producing North America Inc., and Exxon Corporation, Intervenors.
 No. 88-1257.
 United States Court of Appeals,
Tenth Circuit.
 April 30, 1990.
 
 Larry Pain (John L. Williford and Don L. Jemison, with him on the briefs), Bartlesville, Okl., for petitioners.
 Jill L. Hall, Atty. (Catherine C. Cook, General Counsel, Jerome M. Feit, Sol., and John H. Conway, Atty., on the brief), F.E.R.C., Washington, D.C., for respondent.
 Before McKAY and SETH, Circuit Judges, and CONWAY, District Judge*.
 SETH, Circuit Judge.
 
 
 1
 The petitioners, natural gas producers, and intervenors ("the Producers") seek review pursuant to 15 U.S.C. Sec. 717r and 15 U.S.C. Sec. 3416 of two orders issued by the Federal Energy Regulatory Commission ("the Commission") on remand from the Fifth Circuit in Texas Eastern Transmission Corp. v. F.E.R.C., 769 F.2d 1053 (5th Cir.). The Fifth Circuit affirmed and remanded in part Orders 94 and 94-A, which allow first sellers of natural gas to recover production-related costs over and above the maximum lawful price under Section 110 of the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. Sec. 3320(a)(1) (1983). Texas Eastern also upheld the Commission's decision that area rate clauses can constitute sufficient contractual authority to collect delivery, but not other production-related cost allowances. On remand the Commission issued Orders 473 and 473-A which, as relevant to this appeal, implemented required protest procedures and provided for the retroactive collection of fuel and power costs. The basic issue on appeal is whether the Commission's orders on remand are within its authority and the Texas Eastern mandate. We hold that there are no procedural or jurisdictional grounds for reversal of the Commission's orders and with two modifications, as explained below, affirm.I.
 
 
 2
 This case arises out of a continuing controversy that stems from a series of orders first issued by the Commission in 1983 under Section 110(a)(2) of the NGPA of 1978, 15 U.S.C. Sec. 3320(a)(2) (1982). The facts and history of this case are discussed in Texas Eastern, 769 F.2d 1053 (5th Cir.), so we will not repeat that discussion here, except as relevant to dispose of the issues in this appeal.
 
 
 3
 Congress gave the Commission authority, by rule or order, to permit first sellers to recover their production-related cost allowances above the maximum lawful price. Section 110(a)(2) of the NGPA, 15 U.S.C. Sec. 3320(a) (1982). In 1983, the Commission adopted final regulations implementing Section 110 which established generic allowances for delivery and compression of natural gas by first sellers. Order 94-A, Final Rule and Order on Rehearing of Order 94, 48 Fed.Reg. 5152, FERC Stats. & Regs. p 30,419 (1983), reh'g denied, Order 94-C (codified at 18 C.F.R. Secs. 271.1100--271.1104 (1987)).
 
 
 4
 In adopting the Order 94 series, the Commission included a requirement that no production-related cost allowances could be charged or collected by the seller unless "expressly authorized." See 18 C.F.R. Sec. 271.1104(c)(4)(ii)(A). Under Section 271.1104(c)(4)(ii)(A) an area rate clause is considered to be evidence of an "express authorization" for a purchaser's agreement to compensate the seller for the cost of delivering the natural gas, but not other production-related cost allowances such as compression.
 
 
 5
 The Texas Eastern court affirmed the Order 94 series, with the modification that on remand the Commission institute a protest procedure to allow aggrieved parties to protest the "presumptions of Order 94-A." Texas Eastern, 769 F.2d at 1065. The court found the lack of protest procedures "troublesome ... [due to the] paramount importance of intent under individual contracts." Id. The protest procedures were to be "modeled" after Order 23-B. See Pennzoil v. F.E.R.C., 645 F.2d 360, 369-71 (5th Cir.) (Pennzoil I ); Pennzoil v. F.E.R.C., 789 F.2d 1128 (5th Cir.) (Pennzoil II ); Hunt Oil Co. v. F.E.R.C., 853 F.2d 1226 (5th Cir.).
 
 
 6
 On remand, the Commission issued Orders 473 and 473-A, the subject of this review, as its final rules modifying the Section 110 regulations as required by the court in Texas Eastern. Order 473, F.E.R.C. Stats. & Regs., p 30,747 (June 3, 1987); Order 473-A, F.E.R.C. Stats. & Regs., p 30,788 (December 29, 1987). Order 473 delineated protest procedures which extended to all NGPA categories of gas, except Sections 105 and 106(b), whether or not subject to Natural Gas Act ("NGA") jurisdiction. Order 473, at 13-15 (R. 160-61). Moreover, interest on retroactive collections of power and fuel allowances was permitted only if specific contractual authority exists. Id. at 9 (R. 156). On rehearing, the Commission adopted the Producers' request to extend protest procedures to allow Producers to show that an area rate clause authorizes compression allowances, but denied the Producers' other requests. Order 473-A at 6-7 (R. 238-39).
 
 II.
 
 7
 Our review is basically to determine whether the Commission followed the Fifth Circuit's mandate in Texas Eastern. Mobil Oil Corp. v. Department of Energy, 647 F.2d 142 (Temp.Emer.Ct.App.) (on second appeal following remand, the court would not reconsider issues decided by prior appeal in coordinate court). The Texas Eastern mandate is "to be interpreted reasonably and not in a manner to do injustice...." Id. at 145 (citing Wilkinson v. Massachusetts Bonding & Ins. Co., 16 F.2d 66, 67 (5th Cir.)). We will also review the Commission's decision to determine whether it was "arbitrary and capricious." 5 U.S.C. Sec. 706(2)(A); Walker Operating Corp. v. F.E.R.C., 874 F.2d 1320, 1337 (10th Cir.). In Walker we stated:
 
 
 8
 "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' "
 
 
 9
 874 F.2d at 1337 (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207).
 
 
 10
 The parties disagree as to what the Texas Eastern court actually decided and the intent of the mandate, particularly with respect to the "expressly authorized" definition in 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B). The Producers first urge that the Commission failed to comply with the Texas Eastern mandate because it "misconstrued" that decision and we should hold that it "reversed" the expressly authorized definition insofar as it seeks to adopt a test other than the contracting parties' intent. Alternatively, they argue the expressly authorized definition is at most a "bursting bubble" type of rebuttable presumption consistent with Pennzoil II.
 
 
 11
 The Commission disputes the merits of the Producers' objections and also contends that they are barred on jurisdictional grounds because the Producers failed to raise it in their petition for rehearing. The provisions of the NGPA, 15 U.S.C. Sec. 3416(a)(4) (1982), prescribe the procedures to be followed by a person seeking judicial review of a Commission order. That section states: "No objection to such order of the Commission shall be considered by the court if such objection was not urged before the Commission in the application for rehearing unless there was reasonable ground for the failure to do so." 15 U.S.C. Sec. 3416(a)(4) (1982). The failure to follow the requirements of this statute is a jurisdictional error which will result in dismissal of that issue. See Colorado Interstate Gas Co. v. F.E.R.C., 791 F.2d 803, 810 (10th Cir.).
 
 
 12
 We hold that the NGPA does not bar the Producers' objections concerning the expressly authorized requirement from judicial review. In the petition for rehearing, Producers' first specification of error was that the Commission erred in "failing to find that with respect to contractual authority for production related cost allowances, the contracting parties' intent is controlling and must be respected." Petition for Rehearing at 3 (R. 207). Specifically, Producers argued:
 
 
 13
 "The Commission ... misconstrues the clear meaning of the [Texas Eastern ] Court.... Both the Commission's 'general rules ' were converted to 'presumptions' by the court, and the Commission was required to set up a procedure whereby either presumption could be challenged as not reflecting the parties' intent. Any other construction takes impermissible liberties with the court's plain meaning."
 
 
 14
 Id. at 10 (R. 214) (emphasis in original). This language is sufficient to put the Commission on notice of whether the Commission misconstrued the Texas Eastern mandate and if the expressly authorized definition is a rebuttable presumption consistent with Pennzoil II. For these reasons, we decline to find waiver.
 
 
 15
 The Commission also urges that the Producers' objection to the "expressly authorized" definition should be dismissed on the ground that it amounts to an impermissible collateral attack. See McCulloch Interstate Gas Corp. v. F.P.C., 536 F.2d 910 (10th Cir.) (a party may not collaterally attack the validity of a prior agency order in a subsequent proceeding).
 
 
 16
 To the extent that issues have been decided by the Texas Eastern court, review of those issues would be contrary to law of the case. See Central Soya Co. v. Hormel, 723 F.2d 1573 (Fed.Cir.) (an appeal of an order issued on remand from a coordinate court constitutes law of the case and shall be given great deference, absent exceptional circumstances); 1B J. Moore, J. Lucas, T. Currier, Moore's Federal Practice p 0.404 at 170 (2d ed. 1988).
 
 
 17
 Although this case concerns whether the Commission followed the Texas Eastern mandate, to issue the order which the Producers seek, we would have to consider whether the Commission's "expressly authorized" definition inappropriately sought to adopt some test other than the contracting parties' intent. See 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B). If this issue was presented to the Texas Eastern court, its review would be contrary to law of the case.
 
 
 18
 A careful reading of Texas Eastern demonstrates not only that the Fifth Circuit was squarely presented this issue, but that the court did not "reverse" the expressly authorized definition as Producers contend. In Texas Eastern, the Fifth Circuit was presented the issue of whether the Commission erred in its decision that an area rate clause could authorize the collection of a delivery but not compression or other production-related cost allowances under Section 110 of the NGPA. The Commission found express authorization for delivery cost allowances in the "very general language of an area rate clause." Texas Eastern, 769 F.2d at 1065. It was the Commission's position that prior experience under the Natural Gas Act, 15 U.S.C. Sec. 717, et seq., supported the construction that area rate clauses authorize delivery but not compression allowances. Id.
 
 
 19
 The Producers, on the other hand, argued that the Commission committed reversible error in holding that area rate clauses do not provide contractual authority for other production-related cost allowances. Texas Eastern, 769 F.2d at 1065. They urged the Fifth Circuit to find that the Commission had inappropriately sought to establish tests other than the contracting parties' intent in the "expressly authorized" definition. Phillips' Brief at 18; Indicated Producers' Brief at 35-36; Texas Eastern, 769 F.2d 1053. The Producers also concede that the "expressly authorized" requirement of 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B) was an issue which was "fully acted upon" by the Fifth Circuit. See Phillips' Reply Brief at 4.
 
 
 20
 The Texas Eastern court found that "[a]s a general matter, these bases [the Commission's] strike us as unassailable." Texas Eastern, 769 F.2d at 1065. The court did not reverse the "expressly authorized" requirement, but affirmed the Commission's treatment of this issue with an important condition. The court noted that it was troubled that the Commission did not clearly provide for a protest procedure to "allow parties the opportunity to show that the intent of the parties with respect to certain area rate clauses is inconsistent with the general rules set out above." Id.
 
 
 21
 In the alternative, the Producers contend that even if the "expressly authorized" definition was not reversed, the Commission improperly characterizes it as a "general rule" that area rate clauses in gas contracts can demonstrate the parties' mutual intent to allow for the collection of only delivery, not compression or other production-related cost allowances. See Order 473-A at 5, 6 (R. 237-38). The Producers urge that 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B) is procedural and at most a "bursting bubble" type of rebuttable presumption consistent with the "Order 23 Presumption." See Pennzoil II, 789 F.2d 1128, 1136-38.
 
 
 22
 To determine the validity of the Producers' argument we first turn to the language of the Texas Eastern mandate. In holding that an area rate clause in a gas contract can authorize the collection of delivery but not necessarily compression or any other production-related cost allowances the Fifth Circuit stated:
 
 
 23
 "It is troublesome, however, that the Commission did not clearly provide for a protest procedure to allow parties the opportunity to show that the intent of the parties with respect to certain area rate clauses is inconsistent with the general rules set out above.... However, because of the paramount importance of intent under individual contracts [citing Pennzoil I ], the Commission should amend its Order 94-A to make clear that in a particular case, an aggrieved party is entitled to attempt to show that its area rate clause is not subject to the presumptions of Order 94-A. The procedures utilized in the former Order 23-B should serve as a model for the required procedures. With this modification, the Commission's treatment of this issue is affirmed."
 
 
 24
 Texas Eastern, 769 F.2d at 1065.
 
 
 25
 This court agrees with the Producers that the Commission's characterization of 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B) as supporting the "general rule" that area rate clauses would be sufficient contract authority for the collection of only delivery and not other production-related cost allowances is in fundamental error, contrary to the Texas Eastern mandate insofar as it has substantive effect outside the protest proceedings. The Texas Eastern court, consistent with Pennzoil I & II, affirmed the procedural, not substantive use of the "presumptions of Order 94-A."
 
 
 26
 The Commission's error stems from its misconception of the nature and effect of the required protest procedures. In Hunt Oil, the Fifth Circuit affirmed that the effect of the "Order 23 Presumption" was procedural and that when determining whether an area rate clause authorizes NGPA rates, the focal point for the Commission's analysis is the contracting parties' intent which is to be ascertained on a case by case basis. Hunt Oil, 853 F.2d 1226, 1229. Under Order 23, if the contracting parties assert their mutual intent for an area rate clause to constitute sufficient contract authority to collect NGPA rates then a "rebuttable presumption" is created in favor of the contracting parties' intent. See Hunt Oil, 853 F.2d 1226, 1230; Pennzoil II, 789 F.2d 1128. However, "[r]ecognizing that area rate clauses do not in all instances authorize the collection of NGPA rates merely because the contracting parties assert that it was their mutual intent to collect such rates, the Commission issued Order 23-B which established [protest] procedures for interstate pipelines" and other third parties to protest the presumption. Hunt Oil, 853 F.2d 1226, 1229-30.
 
 
 27
 In affirming the procedural use of a rebuttable presumption in Order 23, the court in Pennzoil II stated:
 
 
 28
 "Contrary to the Commission's present approach, this Court clearly adopted a 'bursting bubble' theory of presumptions when it affirmed the Order 23 presumption.... [T]he only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact. If the party against whom the presumption operates produces evidence challenging the presumed fact, the presumption simply disappears from the case."
 
 
 29
 Pennzoil II, 789 F.2d at 1136-37 (emphasis in original).
 
 
 30
 The nature of the Orders 473 and 473-A presumptions compel the conclusion that as with Order 23-B, these presumptions are procedural, and were not intended to operate as an affirmative substantive rule. Under Order 473, unlike Order 23-B, the presumption of contract authority in area rate clauses arises not from the existence of mutual intent but from the Commission's and industry's practice. See Order 94-A at p 30,360 (1983). The Commission concluded that the Order 94-A presumption of contract authority for delivery allowances "would exist with or without the mutual agreement of the parties." Notice of Proposed Rulemaking, Compression Allowances and Protest Procedures under NGPA Section 110, at 10-11 (R. 12-13).
 
 
 31
 Thus, under Order 473-A, if the contracting parties assert their mutual intent for an area rate clause to authorize or not authorize a delivery allowance, this fact would have no relevance with respect to the 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B) presumption in favor of contract authority. Likewise, if the contracting parties asserted their mutual intent to collect compression allowances, this too would be irrelevant with respect to the presumption of noncollectability in Order 473-A. If these presumptions had substantive effect outside the protest proceedings, they would exist as a general rule regardless of the contracting parties' intent. This would be contrary to principles established in Pennzoil II and Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312. The Supreme Court in Permian Basin stated:
 
 
 32
 "The regulatory system created by the [Natural Gas] Act is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity."
 
 
 33
 Id. at 822, 88 S.Ct. at 1388-89.
 
 
 34
 In affirming the Order 94-A presumptions, the Texas Eastern court adopted the "bursting bubble" (Thayer type) theory of presumptions consistent with Order 23-B. Although the Commission clearly adopted protest procedures which conform to the Pennzoil cases and the "bursting bubble" theory of presumptions, see Order 473, at 17-19 (R. 164-66), it was in error to the extent that its presumptions are given substantive effect outside the protest proceedings. Pursuant to the bursting bubble theory of presumptions, the only effect of the Order 94-A presumptions would be to shift the burden of producing evidence with regard to the presumed facts. The procedural use of the Orders 473 and 473-A presumptions assures, consistent with Permian Basin and Pennzoil II, that the decision as to who should bear production-related costs will be left, in the first instance, to the contracting parties.
 
 
 35
 Under Orders 473 and 473-A, the presumed facts are the existence of contract authority when a party relies on an area rate clause to collect a delivery allowance or noncollectability of compression and other production-related cost allowances under Section 110. Once the party against whom the presumption operates produces evidence challenging the presumed fact (as outlined in Order 473, at 24 (R. 171)) the presumption bursts and is eliminated from the analysis. Significantly, the presumption disappears and not the evidence supporting the presumption such as industry or Commission practice. See Hunt Oil, 853 F.2d 1226, 1234-35. Finally, when making specific determinations of intent in the protest proceedings the Commission is obligated to take account of and follow any differences with general contract law that state contract law may have. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Pennzoil I, 645 F.2d 360, 384. With these modifications, we affirm the Commission's Orders 473 and 473-A presumptions.
 
 III.
 
 36
 Producers next contend that Orders 473 and 473-A should be reversed insofar as they establish protest procedures for non-NGA gas not subject to the Commission's jurisdiction. As support, they urge that the protest procedures require the Commission to interpret gas contracts in categories NGPA Sections 102(c), 103(c) and 107(c)(1-4), which triggers NGPA Section 601(a)(1)(B), 15 U.S.C. Sec. 3431(a)(1), removal from NGA jurisdiction. According to Producers, since the Commission unlawfully interprets contracts over which it has no jurisdiction, the protest procedures should be limited as in Pennzoil I to NGA gas. See Pennzoil I, 645 F.2d 360, 380-82.
 
 
 37
 As a threshold matter, Producers mischaracterize Orders 473 and 473-A protest procedures as requiring the Commission to engage in contract interpretation. The Texas Eastern court sustained the authority of the Commission under Section 110 of the NGPA to implement the Order 94 series on the ground that it was a reasonable eligibility requirement. Texas Eastern, 769 F.2d 1053, 1067. In that case, the Producers argued that the Commission's treatment of area rate clauses in the Order 94 series was unlawful because it essentially required the Commission to "interpret" gas contracts over which it had no jurisdiction. Phillips' Initial Brief at 34-41, Texas Eastern, 769 F.2d 1053. In upholding Order 94 as an eligibility requirement, the Fifth Circuit stated:
 
 
 38
 "The 1982 Pennzoil case [Pennzoil Co. v. F.E.R.C., 671 F.2d 119 (5th Cir.) ] implies that the Commission has the corresponding power to state that particular contract language will not authorize a special rate. This is precisely what the Commission had done with respect to the area rate clause in intrastate gas contracts and the Section 110 allowances."
 
 
 39
 Texas Eastern, 769 F.2d at 1067. The protest procedures established under Orders 473 and 473-A are similarly a reasonable eligibility requirement which fall within the Commission's jurisdiction. See Pennzoil, 671 F.2d 119 (5th Cir.) (distinguishing eligibility requirements from contract interpretation). The Commission's protest procedures are no more than a mechanism that under the Texas Eastern mandate will allow "an aggrieved party ... to show that its area rate clause is not subject to the presumptions of Order 94-A." Texas Eastern, 769 F.2d at 1065.
 
 
 40
 Since we do not find that the Commission engaged in "contract interpretation," we need not address whether Section 110 provides the Commission independent authority to interpret gas contracts removed from NGA jurisdiction by Section 601. See Pennzoil I, 645 F.2d 360, 381 (the Commission cannot interpret contracts outside its NGA jurisdiction unless the NGPA vests it with independent authority).
 
 
 41
 We also find no merit in the Producers' contention that the Commission's protest procedures fail to comply with the Texas Eastern mandate to the extent they apply to non-NGA gas contracts. The Texas Eastern court's instruction to "model" the protest procedures after Order 23-B did not require the Commission to adopt the jurisdictional restraints of Order 23-B. The protest procedures established in Order 23-B were implemented under the Commission's authority under NGA Sec. 4 which, in turn, expressly pertains only to interstate contracts for gas still subject to the Commission's NGA jurisdiction. Pennzoil I, 645 F.2d 360, 390. It is for this reason that the Pennzoil I court upheld the Commission's limitation of its protest procedures to gas contracts covering gas within the NGA. Id. at n. 61.
 
 
 42
 In this case, unlike Order 23-B, the Commission's authority to implement protest procedures stems from Section 110 of the NGPA. Section 110(a)(2), 15 U.S.C. Sec. 3320(a) (1982), specifically provides the Commission with authority by rule or order to allow first sellers to recover their production-related cost allowances over and above the maximum lawful price. Section 110 also applies to all NGPA gas sales subject to price regulation under the NGPA. Thus, unlike the authority in Order 23-B [NGA Sec. 4], Section 110 provides no such jurisdictional restraint.
 
 
 43
 Our holding is consistent with the Texas Eastern mandate. There is no express limitation in the court's mandate which requires the Commission to limit its protest procedures to NGA gas. Furthermore, 18 C.F.R. Sec. 271.1104(c)(4)(ii)(B) allows "all sellers" of gas subject to NGPA price ceilings to use area rate clauses as evidence of the "expressly authorized" requirement. Accordingly, the Commission's protest procedures extended to all price regulated gas sales within Section 110 of the NGPA, regardless of whether or not subject to the NGA. This is a reasonable implementation of the Texas Eastern mandate to allow aggrieved parties an opportunity to challenge the presumptions of Order 94-A.
 
 
 44
 Even if the Commission has jurisdiction to establish protest procedures, the Producers assert that it cannot retroactively apply its procedures to deliveries of non-NGA gas prior to the effective date of Order 473 without advance notice. With respect to this issue, we affirm the Commission's position. 18 C.F.R. Sec. 271.1104(e) (1987) allows producers to collect certain production-related cost allowances retroactively, from July 25, 1980 to March 7, 1983. Since the collection of these retroactive allowances was upheld in Texas Eastern, 769 F.2d 1053, 1065-66, we agree with the Commission that "[i]t would be anomalous to conclude that producers could recover these production-related cost[s] retroactively but that the purchasers of the gas could not protest these same collections for this past period." Order 473-A at 8 (R. 240).
 
 
 45
 Furthermore, we find no issue of improper notice. The Commission issued Order 94 with proper notice of retroactive allowances in July 1980. As previously discussed, Order 94 was implemented under Section 110 of the NGPA which applies to all NGPA gas sales subject to price regulation under the NGPA, including non-NGA gas. Therefore, since proper notice was given for the collection of retroactive allowances under Order 94, purchasers had similar notice that such allowances could encompass non-NGA gas.
 
 IV.
 
 46
 Next, the Producers dispute that the Texas Eastern mandate required express contract authority for interest on retroactive collections of production-related costs between March 7, 1983 and August 2, 1987. In Texas Eastern, the Fifth Circuit required the Commission to establish fuel and power allowances for pre-NGPA systems and instructed the Commission: "These costs are recoverable to the same extent and retroactive to the same date from which they have been recoverable up to now with respect to post-NGPA facilities." Texas Eastern, 769 F.2d at 1065-66. On remand, the Commission amended 18 C.F.R. Sec. 271.1104(d)(1)(iv)(B)(2)(iii) to provide that fuel and power allowances can be collected retroactively from August 10, 1987 to March 7, 1983, with interest only if it is expressly authorized by contract. See Order 473-A at 12-13 (R. 244-45).
 
 
 47
 The Producers contend that since the Commission erroneously failed to establish fuel and power allowances for pre-NGPA systems, it would be inequitable to preclude Producers from collecting interest without contract authority for those allowances incurred after March 7, 1983. As support, they urge that since these Section 110 allowances were erroneously withheld they should be recoverable with interest on the theory that they are tantamount to a "refund" or to achieve equitable compensation for the use of money, both of which are recoverable without contract authorization. See 18 C.F.R. Secs. 154.67, 154.102; Shell Oil Co. v. F.E.R.C., 664 F.2d 79 (5th Cir.).
 
 
 48
 The Commission acted reasonably and within its discretion in requiring contract authority for the collection of interest on retroactive fuel and power allowances before August 10, 1987. The pre-NGPA fuel and power allowances established in Order 473 on remand are retroactive as to deliveries prior to August 10, 1987. Since express contract authority is required for the collection of interest for fuel and power costs with respect to post-NGPA systems, see 18 C.F.R. Sec. 271.1104(e)(2) (1986), the Commission's extension of this requirement to pre-NGPA systems is a reasonable implementation of the Texas Eastern parity requirement.
 
 
 49
 Moreover, the reasonableness of the Commission's regulatory scheme to exclude interest without express contract authorization for retroactive allowances under Section 110 was fully affirmed in Texas Eastern, 769 F.2d 1053, 1066. In Texas Eastern, as here, the Producers argued that the Commission's regulatory scheme was "highly analogous to a rate refund, where interest would be recoverable." Id. (citing 18 C.F.R. Sec. 154.102(c)(2)). While it is true that certain regulatory schemes allow the recovery of interest without express contract authorization, this requirement is inconsistent with the Commission's overall regulatory scheme under Section 110 of the NGPA. Furthermore, our decision is equitable since the Producers were on notice as early as 1983 that interest on production-related costs can only be collected if the contract expressly so provides. See Order 94-A, 48 Fed.Reg. 5151 (Feb. 3, 1983); FERC Stats. & Regs. [Reg. Preambles 1982-1985] p 30,419, at 30,368 (1983). For these reasons, we affirm the Commission's requirement of express contract authorization for the collection of interest on retroactive fuel and power costs prior to August 10, 1987.
 
 
 50
 Finally, the Producers urge us to clarify that the express contract authorization requirement for interest applies only to "retroactive" allowances as stated in 18 C.F.R. Sec. 271.1104(e) and not to non-retroactive late and past-due payments generally. The Producers did not raise this specific objection in their application for rehearing; therefore, they waive this objection unless there is a reasonable ground excusing the failure below. See 15 U.S.C. Sec. 3416(a)(4); Colorado Interstate Gas Co. v. F.E.R.C., 791 F.2d 803, 810 (10th Cir.).
 
 
 51
 Such reasonable grounds exist here. The express contract authority requirement for the collection of interest specifically applies to "retroactive" collections under 18 C.F.R. Sec. 271.1104(e). See 18 C.F.R. Sec. 271.1104(d)(1)(iv)(B)(2)(iii). However, since purchasers have sought to apply Section 271.1104(e) and the express contract authority requirement for interest to late and past-due payments, it is unclear whether these payments fall within the scope of Section 271.1104(e). See Shell Offshore Inc. & Shell Western E & P Inc., 44 F.E.R.C. (CCH) p 62,105 (August 4, 1988). It was not until purchasers applied the express contract authority limitation to these payments that the Producers could have known they were aggrieved and raised this specific objection. Therefore, this ambiguity excuses Producers' failure to raise this specific objection in their application for rehearing.
 
 
 52
 The Commission, in rejecting Producers' request to clarify whether the express contract authority requirement for the collection of interest is limited to "retroactive" allowances as stated in 18 C.F.R. Sec. 271.1104(e), stated:
 
 
 53
 "Nor can Phillips fairly argue here that the Commission should have provided special relief because Petitioners' gas sales customers pay their bills late (Phillips Br. at 32-34). This is a different issue entirely from that of allowing retroactive collections with interest."
 
 
 54
 Commission's Brief at 37, n. 15.
 
 
 55
 An agency's interpretation of its own orders is entitled to great weight. Colorado Interstate Gas Co., 791 F.2d 803, 810 (10th Cir.). When an agency order is ambiguous, a court will uphold the agency's interpretation unless it is arbitrary and capricious. Id. Here, the Commission's conclusory rejection of the Producers' objections provides no sound basis for excluding interest on non-retroactive unpaid or late payments without express contract authority. Although we have sustained the reasonableness of the Commission's regulation requiring express contract authority for the collection of interest on retroactive allowances prior to August 10, 1987, we find no support that this limitation was intended to prohibit the collection of interest on late or unpaid production-related allowances incurred after the retroactive period. See Shell Offshore Inc. & Shell Western E & P Inc., 44 F.E.R.C. p 62,105 (August 4, 1988). Indeed, the Commission acknowledged that this was "a different issue entirely from that of allowing retroactive collections with interest." Commission's Brief at 37, n. 15. Therefore, we instruct the Commission on remand to clarify that its requirement for express contract authority for interest in Orders 473 and 473-A applies only to "retroactive" allowances as stated in 18 C.F.R. Sec. 271.1104(e) and not to non-retroactive late paid or unpaid production-related cost allowances.
 
 
 56
 For these reasons, Orders 473 and 473-A are AFFIRMED in part, and REMANDED in part for clarifications in light of this opinion.
 
 
 
 *
 Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation